STATE of Missouri, Respondent,

v.

Tony M. BOWMAN, Appellant.

No. WD 70366.

Missouri Court of Appeals,
Western District.

March 23, 2010.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 27, 2010.

Application for Transfer Denied
June 29, 2010.

Frederick J. Ernst, Assistant Appellate Defender, Kansas City, MO, for Appellant.

Chris Koster, Attorney General, Terrence M. Messonnier, Assistant Attorney General, Jefferson City, MO, for Respondent.

Before Division III: JAMES EDWARD WELSH, Presiding Judge, and MARK D. PFEIFFER and KAREN KING MITCHELL, Judges.

MARK D. PFEIFFER, Judge.

Tony M. Bowman (Bowman) appeals the trial court's judgment convicting him, after a jury trial, of one count of first-degree burglary in violation of section 569.160.[1] On appeal, he presents two points in which he challenges the sufficiency of the evidence and the trial court's verdict director. We affirm.

## Statement of Facts

Jerry Morris (Morris) and his wife, Achiella Morris (Achiella), purchased a duplex at 3925 Troost in Kansas City, Missouri. The duplex consists of a downstairs and upstairs apartment. At the front of the duplex is a door leading to a small common area hallway. The hallway contains two doors, which lead to the two apartment units. The two apartments also share a common backdoor area.

Morris and Achiella purchased the duplex with the intent of renovating it so they could rent it. In May 2007, Morris and Achiella were still in the process of renovating the duplex and neither apartment unit was occupied by a tenant. In order to prevent entry into the duplex during the ongoing renovation, Morris secured two-by-four boards across the front door.

On May 7, 2007, Bowman and his accomplice went to the duplex at 3925 Troost. They tore down the two-by-four boards and entered the small hallway. They pried a panel off the downstairs apartment's door and entered the downstairs apartment. While they were in the downstairs apartment, they stole some of Morris's tools. After taking these tools, Bowman and his accomplice went back to the small hallway and then went to the upstairs apartment. Bowman and his accomplice stole copper piping from the upstairs apartment.

While they were in the upstairs apartment, Morris and Achiella returned to the duplex. As they approached the duplex, they realized that someone had removed the two-by-four boards from the front door. Morris and Achiella went to the downstairs apartment. At this time, they heard people in the upstairs apartment. Achiella called the police. Morris went

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

back to the common area hallway. At this time, Bowman and his accomplice tried to exit the upstairs apartment by going through the front door but Morris held the door shut. Bowman and his accomplice then tried to exit the upstairs apartment through the common backdoor area. The back door was locked so Bowman and his accomplice entered the downstairs apartment from the backdoor area. They ran through the downstairs apartment to its front door. At this time, Bowman's accomplice struck Achiella. Bowman and his accomplice exited through the downstairs apartment's front door and passed Morris on their way out of the common area entry way.

The police eventually apprehended both Bowman and his accomplice. The State charged Bowman with, among other things, one count of burglary in the first degree in violation of section 569.160. The State's information charged that Bowman "knowingly entered unlawfully in a building, located at 3925 Troost, Kansas City, MO" while "present in such building Jerry Morris, a person who was not a participant in the crime." After the presentation of evidence, the trial court submitted Instruction No. 8 to the jury, which instructed the jury that Bowman was guilty of first-degree burglary if, among other things, the jury found that Bowman "knowingly entered unlawfully in a building, located at 3925 Troost" while "Jerry Morris was present in the building." Bowman did not object to this instruction. The jury returned a verdict finding Bowman guilty of first-degree burglary. The trial court entered judgment against him and sentenced him to a ten-year term in the Missouri Department of Corrections. This appeal follows.

### Sufficiency of the Evidence

■ In his first point on appeal, Bowman claims that the trial court erred in overruling his motion for judgment of acquittal on the charge of first-degree burglary because the State failed to present evidence on one of its proof elements: that a person who was not participating in the crime was present in the structure. Bowman concedes that Morris was present in the downstairs apartment and in the common area hallway when Bowman was in the upstairs apartment. Bowman maintains, however, that the downstairs and upstairs apartments are separate buildings for the purpose of section 569.160 and that the common area hallway is not part of either building. Thus, Bowman claims that, because Morris never entered either apartment at the same time he was committing the robberies therein, Morris was not "present in the structure."

This court's review of whether or not the trial court erred in overruling Bowman's motion for judgment of acquittal is limited to determining whether or not the evidence was sufficient to persuade a reasonable juror, beyond a reasonable doubt, of each of the crime's elements. *State v. Moran*, 297 S.W.3d 100, 102 (Mo.App. W.D.2009). In conducting this review, we do not weigh the evidence. *Id.* Rather, we review the evidence and the reasonable inferences from that evidence in a light most favorable to the jury's verdict and disregard all contrary evidence. *Id.*

■ The Due Process Clause requires the State to prove every element of the crime charged beyond a reasonable doubt. *Id.* In this case, the State charged Bowman with, among other things, one count of the class B felony of first-degree burglary in violation of section 569.160. Section 569.160 states that:

A person commits the crime of burglary in the first degree if he knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable

structure for the purpose of committing a crime therein, and when in effecting entry or while in the building or inhabitable structure or in immediate flight therefrom, he or another participant in the crime:

(1) Is armed with explosives or a deadly weapon; or

(2) Causes or threatens immediate physical injury to any person who is not a participant in the crime; or

(3) There is present in the structure another person who is not a participant in the crime.

In its information in lieu of an indictment, the State alleged that:

[I]n that on or about 7th day of May, 2007, in the County of Jackson, State of Missouri, the defendant, either acting alone or purposefully in concert with another, knowingly entered unlawfully in a building, located at 3925 Troost, Kansas City, MO and owned by Jerry Morris, for the purpose of committing stealing therein, and while in such building there was present in such building Jerry Morris, a person who was not a participant in the crime.

Thus, given the law of section 569.160 and the State's information, to prove its case, the State was required to present evidence establishing that (1) Bowman knowingly entered a building located at 3925 Troost Avenue unlawfully, (2) Bowman did so with the purpose of committing the crime of stealing, and (3) Morris was present in the building while Bowman was committing the crime. MAI–CR3d 323.52; *Huntley v. State,* 204 S.W.3d 668, 673 (Mo. App. S.D.2006).

Section 569.010 lists the definitions for section 569.160. It does not define the term "building." *State v. Washington,* 92 S.W.3d 205, 208 (Mo.App. W.D.2002). Section 569.010(4), however, does state that "[i]f a building or structure is divided into separately *occupied* units, any unit not occupied by the actor is an 'inhabitable structure of another[.]' " (Emphasis added.) Thus, if the apartment units in question were "occupied" at the time of Bowman's crime, there would be no question that each apartment unit would be deemed a separate "inhabitable structure," and the State would be required to prove that the elements of the charged criminal offense occurred in one or the other duplex apartment unit, rather than the overall duplex. But, in the present instance, both of the units were undergoing renovation and neither was "occupied." Thus, we question whether Bowman can successfully argue that section 569.010(4) requires that a vacant building with two unoccupied apartment units must be treated as two separate "inhabitable structures" for the purpose of the burglary statute that he was charged with.

Having said the above, the Eastern District of this court has interpreted section 569.010(4) to mean that each apartment in a multi-unit building is a separate inhabitable structure, even where one of the units is unoccupied. *State v. Harris,* 873 S.W.2d 887, 888–89 (Mo.App. E.D.1994). While such an interpretation ignores the "occupancy" precondition in section 569.010(4), we stop short of refusing to follow the precedent of *Harris* as the facts of the present case are factually distinguishable, rendering the "one building" versus "two apartment units" debate moot.

In the case at hand, the evidence established that Morris was in the common area hallway when Bowman robbed the upstairs apartment and attempted flight from the duplex. Bowman himself concedes in his brief that, if the duplex common area was part of the upstairs apartment, then Morris was present in the structure and the

State presented sufficient evidence of his guilt of the charged criminal offense.

Neither section 569.010 nor section 569.160 explains whether or not the hallways or common areas outside an apartment unit in a multi-unit building constitute part of the apartment unit for the purposes of section 569.160. Our research has disclosed no cases in Missouri addressing the issue. Thus, we must interpret the term "building" in a manner designed to give effect to the intent of the General Assembly as to whether or not the legislature intended for the interpretation of "building" to include common area hallways of a multi-unit building. *State ex rel. Burns v. Whittington,* 219 S.W.3d 224, 225 (Mo. banc 2007). In the absence of statutory definitions, we may derive the plain and ordinary meaning of any term by considering the context of the entire statutory scheme. *Id.* We may also consider the statute's purpose. *Harper v. Dir. of Revenue,* 118 S.W.3d 195, 199 (Mo.App. W.D. 2003) (overruled on other grounds by *Akins v. Director of Revenue,* 303 S.W.3d 563 (Mo. banc 2010)).

■ In the context of a multi-family residential unit like an apartment complex, Bowman argues that we must construe the definition of building narrowly to include only the areas under the tenant's exclusive control. Bowman argues that we cannot extend the definition of building or inhabitable structure to hallways and common areas because a tenant lacks exclusive control over the hallways and common areas. For example, while a tenant may have the right to exclude someone from his or her apartment, the tenant would not necessarily have the right to exclude someone from the common areas. Bowman claims that if we were to conclude that a common area is part of a tenant's apartment, then a tenant could have another tenant arrested for trespassing merely because that tenant

was in the hallways or common areas. We disagree. We conclude, based on case precedent from other states, similar Missouri cases, and the public policy behind section 569.160, that secured common areas and hallways of a multi-unit building that are not otherwise open to the public can be considered a part of an apartment unit for the purpose of section 569.160.

Many other states that have considered this issue have concluded that the hallways in an apartment complex are, for the purposes of their burglary statute, part of the apartment. For example, in *Commonwealth v. Goldoff,* 24 Mass.App.Ct. 458, 510 N.E.2d 277 (1987), the State convicted the defendant of burglary under a statute, which made it a crime to assault someone in his dwelling house:

> Whoever breaks and enters a dwelling house in the night time, with intent to commit a felony, or whoever, after having entered with such intent, breaks such dwelling house in the night time, any person being then lawfully therein, and the offender being armed with a dangerous weapon at the time of such breaking or entry, or so arming himself in such house, or making an actual assault on a person lawfully therein, shall be punished by imprisonment in the state prison for life or for any term of not less than ten years.

Mass. Gen. Laws Ann. Ch. 266 § 14 (2008); *Goldoff,* 510 N.E.2d at 279.

The undisputed evidence, however, established that the defendant assaulted the victim in the hallway of his apartment complex. *Goldoff,* 510 N.E.2d at 279. Like Bowman, the defendant claimed on appeal that the term dwelling house meant the victim's apartment and any areas that he had under his exclusive control. *Id.* The defendant argued that, since the victim did not have exclusive control over the hallway, it was not part of the victim's

dwelling house. *Id.* In support of his position, the defendant cited to cases establishing that an apartment tenant has no reasonable expectation of privacy in areas shared by all the tenants. *Id.*

In rejecting the defendant's argument, the court found that, while for many claims or crimes, a tenant must show that he or she had exclusive control over the premises, the courts had always construed the burglary statutes broadly and had never required the victim to have exclusive control over the area:

> As to all the cases relied upon by the defendant . . ., it can be said of each that the defendant-tenant's claim depended upon a right of exclusive use of those areas to which, it was contrarily found, there was free and open access and all the tenants had a right to come and go.

> *It is the purpose of burglary statutes, however, to prohibit that conduct which violates a person's right of security in a place universally associated with refuge and safety, the dwelling house. To further rather than frustrate the purpose of these statutes, the term "dwelling house" as used in the context of burglary always has been construed broadly.* "By the common law, every house for the dwelling and habitation of man is taken to be a mansion house, wherein burglary may be committed. . . . Any outhouses, within the curtilage or some common fence as the mansion itself, must be considered as parcel of the mansion. . . . [I]f the outhouses be adjoining the dwelling house, and occupied as parcel thereof, though there be no common enclosure or curtilage, they may still be considered as parts of the mansion." The "historical background of the burglary statutes, the traditional meaning given to 'dwelling' and 'dwelling house' by legal dictionaries and treatises," show that the term may comprehend areas within a person's place of habitation but which are beyond his exclusive control. *Id.* at 280 (emphasis added) (citations omitted).

Based on this historical precedent, the court concluded that the victim's hallway could be considered part of the victim's dwelling house when the hallway was secure:

> When this historical right to security in one's place of habitation is considered in the context of contemporary multi-unit residential structures, we can think of no reason why that right should not apply to tenants who reach their apartment units by a common hallway which they have collectively secured from the general public by a locked door.

*Id.*; *State v. Ranieri*, 560 A.2d 350, 353 (R.I.1989); *People v. Maisonet*, 304 A.D.2d 674, 760 N.Y.S.2d 58, 59–60 (N.Y.App.Div. 2003) (stating that "[t]he hallway of an apartment building may constitute a 'dwelling,' . . . if it is inaccessible to the public."); *People v. Torres*, 162 A.D.2d 385, 556 N.Y.S.2d 920, 921 (N.Y.App.Div.1990); *see also* 12A C.J.S. *Burglary* § 37 (2004) (stating that generally "a common area or hallway in an apartment building that is collectively secured from the general public is part of a dwelling house for purposes of breaking and entering statute"); 13 Am. Jur.2d, *Burglary*, § 6 (2009) (noting that common structures of apartment buildings like hallways are included in the definition of dwelling house for the purposes of burglary).

Similar to other states, the General Assembly's goal in making burglary a crime in Missouri is to protect homes and buildings wherever they are located. *State v. Liffick*, 815 S.W.2d 132, 134 (Mo.App. E.D. 1991). Furthermore, in enacting section 569.160, the General Assembly's goal is to increase the penalties for a person who puts an innocent person's life in harm's

way when he or she commits the burglary. *See State v. Washington*, 92 S.W.3d 205, 209 (Mo.App. W.D.2002) (stating the general purpose of section 569.160).

Consistent with this purpose, Missouri has also interpreted the terms building and inhabitable structure broadly. For example, in *State v. Walker*, 693 S.W.2d 237 (Mo.App. S.D.1985), the court dealt with the issue of whether or not the defendant had committed a crime with another person present in the structure when the evidence established that he robbed a floral shop but that the other people were in their residence, which was attached to the shop. 693 S.W.2d at 238. The court concluded that the residence and the flower shop were one building for the purposes of section 569.160:

> Proof that *any* burgled building contained people who were not participants in the ongoing felonious break-in meets the statutory requirement to prove first degree burglary. The living quarters and flower shop were integral parts of the same structure. The [victims] were physically present in the structure at the time of the incident in question, and there was a felonious burglary of the structure for the purpose of stealing.

*Id.* at 239.

Missouri courts have also held that a house's garage could be part of a building for the purposes of section 569.160 as long as the house is accessible from the garage. For example, in *State v. Allen*, 944 S.W.2d 580 (Mo.App. W.D.1997), the court held that the State made a submissible case for first-degree burglary when it presented evidence that the defendant knowingly entered the house's garage where it appeared that the house's residents could access the garage directly from inside of the house. 944 S.W.2d at 582–83; *see also Washington*, 92 S.W.3d at 209–10 (holding that the garage did not constitute a part of

the home in that case only because there was no connection between the inside of the house and the inside of the garage).

■ This reasoning is easily applicable to the common areas of an apartment building. In many cases, these areas are collectively secured by the tenant group and not otherwise open to the public. And, while one particular tenant does not have exclusive control over common areas so such tenant could not, for example, have another tenant arrested for trespassing, each tenant should feel secure in those areas. A criminal intruder who unlawfully enters those areas violates that security. Furthermore, a criminal intruder who enters those areas is likely to encounter other people, which increase the odds that the intruder's criminal activities will put an innocent person in harm's way. Thus, we conclude that the common areas in an apartment building can constitute part of the apartment for the purposes of section 569.160 as long as the common area in question is a secured area not otherwise open to the public. Of course, since the physical features of a multi-residential structure can vary, whether or not the common areas of the structure are part of each building will be dependent on the factual circumstances of each case. *Goldoff*, 510 N.E.2d at 281.

In this case, we believe that the front common area of 3925 Troost is part of both apartments. The undisputed evidence established that Morris had secured the front entry of 3925 Troost to prevent unwanted entry from the public. *See Maisonet*, 760 N.Y.S.2d at 59–60 (holding that hallway could be considered part of apartment if it was inaccessible to public). Furthermore, the undisputed evidence established that the common area back door was sealed. A person could enter and leave the upstairs apartment only through the front common area. This is sufficient

for us to conclude that the front area is an integral part of both apartments. Thus, the common area is a part of both apartments. Since the undisputed evidence established that Morris was in the front common area during the burglary incident, the State presented sufficient evidence that Morris was present in the subject building, even if we accept Bowman's argument that the building in question was the upstairs apartment unit of the building. The trial court did not err in overruling Bowman's motion for judgment of acquittal.

## State's Verdict Director

In his second point, Bowman claims that the trial court plainly erred in submitting to the jury Instruction No. 8, the State's verdict director on the first-degree burglary charge, which stated that Bowman was guilty if he "knowingly entered unlawfully in a building, located at 3925 Troost Ave," and "Jerry Morris was present in the building" because the instruction failed to specify the precise apartment unit. Specifically, Bowman claims that Instruction No. 8 was flawed because it did not identify the building as either the downstairs apartment or upstairs apartment.

Pursuant to Rule 28.02(c) [2] "[w]henever there is an MAI–CR instruction or verdict form applicable under the law and Notes on Use, the MAI–CR instruction or verdict form shall be given or used to the exclusion of any other instruction or verdict form." "The giving or failure to give an instruction or verdict form in violation of this Rule 28.02 or any applicable Notes on Use shall constitute error, the error's prejudicial effect to be judicially determined...." Rule 28.02(f). Bowman, however, concedes that he did not preserve his claim of instructional error and requests plain error review pursuant to Rule 30.20.

Rule 30.20 grants us authority to consider "plain errors affecting substantial rights ... when [we find] that manifest injustice or miscarriage of justice has resulted" from the error. Under plain error review, we must first examine the record to determine whether or not the appellant's claim is one that facially shows grounds for believing that an error resulted in manifest injustice to him. *State v. D.W.N.*, 290 S.W.3d 814, 817 (Mo.App. W.D.2009). If this review establishes grounds for believing that an error occurred and that the error resulted in manifest injustice, then we review the record to determine whether or not the error actually resulted in manifest injustice. *Id.* In the absence of such a determination, we decline to exercise our discretion to review for plain error under Rule 30.20. *Id.* We use this rule sparingly and will not use it to review every alleged trial error that has not been properly preserved for review. *Id.* " 'Plain error is evident, obvious, and clear error.' " *Id.* (quotation omitted).

It is well-established law that instructional error rarely rises to the level of plain error. *Id.* at 827. To establish that the trial court plainly erred in submitting a jury instruction, the defendant must establish that the instruction so misdirected or failed to instruct the jury that it is apparent that the error affected the jury's verdict and caused a manifest injustice or miscarriage of justice. *Id.* The defendant bears the burden of proof. *Id.* Hence, to succeed on his claim of instructional error, Bowman has the burden of not only proving that Instruction No. 8 clearly and obviously failed to properly instruct the jury but also that the error so affected the

---

**2.** All rule references are to Missouri Rules of Criminal Procedure 2009, unless otherwise indicated.

verdict that it caused him manifest injustice or a miscarriage of justice.

In this case, the trial court submitted Instruction No. 8 to the jury. Instruction No. 8, the State's verdict director, stated that:

> As to Count I, if you find and believe from the evidence beyond a reasonable doubt:
>
> First, that on or about May 7, 2007, in the County of Jackson, State of Missouri, the defendant knowingly entered unlawfully *in a building,* located at 3925 Troost Ave., Kansas City, Missouri and owned by Jerry Morris, and
>
> Second, that defendant did so for the purpose of committing the crime of stealing therein, and
>
> Third, *that while the defendant was in such building, Jerry Morris was present in the building* and Jerry Morris was not a participant in the crime,
>
> [T]hen you will find the defendant guilty under Count I of burglary in the first degree.

(Emphasis added.)

█ As we noted in Bowman's first point, while section 569.010(4) preconditions its definition of separate inhabitable structures on whether or not the units are "occupied," *Harris,* 873 S.W.2d at 889, arguably holds that each apartment unit at 3925 Troost was a separate building or inhabitable structure for the purposes of section 569.160. Thus, because Instruction No. 8 did not identify the building as either the downstairs or upstairs apartment, it had the *potential* to create a situation where the jury could have found that Bowman was guilty because he robbed the upstairs apartment even though Morris was present in the downstairs apartment or found that Bowman was guilty because he robbed the downstairs apartment even though Morris was present in the upstairs

apartment. To eliminate any such possible confusion, Instruction No. 8 should have identified the building in paragraphs one and three as either the downstairs apartment or upstairs apartment. For the sake of argument, even if we conclude that the trial court committed plain error in submitting Instruction No. 8, we are still obligated to review the record to determine whether or not a manifest injustice or a miscarriage of justice actually occurred. *D.W.N.,* 290 S.W.3d at 828. We do not believe that it did.

█ Our review of the record establishes that the trial court's error did not result in manifest injustice. Well-established law states that the trial court does not commit plain error when it submits a verdict director that omits or misinforms the jury about an essential element of the crime if that element is not in dispute at trial. *See State v. McFarland,* 259 S.W.3d 621, 624 (Mo.App. S.D.2008); *State v. Wright,* 30 S.W.3d 906, 912 (Mo.App. E.D. 2000).

In that regard, at trial, Bowman conceded that someone robbed the upstairs apartment. Bowman also conceded that Morris entered the common area between the apartments during the robbery, which was, for the purpose of the burglary statute, a part of the upstairs apartment. Because of these concessions, Bowman actually conceded at trial that the State had established that someone committed first-degree burglary. Bowman's defense at trial was that he was not involved in the robbery and that Morris mistakenly identified him as one of the robbers. The only issue at trial was whether or not Bowman was the perpetrator of the crime. Since Bowman conceded that Morris was present in the common area when someone robbed the upstairs apartment, the trial court's error in Instruction No. 8 could not have affected the jury's verdict. *See, e.g.,*

*State v. Davis,* 210 S.W.3d 229, 239 (Mo. App. W.D.2006) (holding that trial court's instructional error on issue of deliberation did not cause the defendant any manifest injustice because the defendant did not challenge the evidence on deliberation at trial and, instead, argued that he was not involved in the crime); *State v. Busch,* 920 S.W.2d 565, 569 (Mo.App. E.D.1996).

We, therefore, affirm the trial court's judgment.

JAMES EDWARD WELSH, Presiding Judge, and KAREN KING MITCHELL, Judge, concur.