**STATE of Missouri, Respondent,**

v.

**Darryl MOORE, Appellant.**

**No. ED 95952.**

Missouri Court of Appeals,
Eastern District,
Division One.

Feb. 21, 2012.

Gwenda Renee' Robinson, St. Louis, MO, for appellant.

Chris Koster, Atty. Gen., Timothy A. Blackwell, for respondent.

GARY M. GAERTNER, JR., Judge.

*Introduction*

Darryl Moore appeals from a sentence and judgment of conviction for murder in the second degree and armed criminal action. He asserts that the trial court erred in refusing to grant a writ of body attachment and that there was insufficient evi-

dence to support the conviction. We affirm.

## Background

Moore was charged with murder in the first degree (Count I) and armed criminal action (Count II). The evidence at the 2010 jury trial showed the following.

On April 8, 2009, Keven Sanders, Sr. (Sanders), father of Keven Sanders, Jr. (Victim), was waiting outside his home when he heard a commotion coming from the backyard. He lived in a four-family apartment building with a gangway between his and the neighboring structure. He followed the gangway to the backyard, where he discovered approximately six or seven men, including Moore, Lamarkis Cowan, and Claude Lamont Jenkins. Cowan and another man were arguing. Moore was not involved in the argument. Sanders knew Moore from the neighborhood and did not like him. Moore's appearance is distinctive in that he is missing one arm. Moore and Victim had gotten into a fight about eight months previously, stemming from an altercation between Sanders, Moore, and Moore's brother.

Sanders told the men to move elsewhere, and Victim joined the group upon hearing his father's voice. Sanders walked to the front of his house again, and after two or three minutes he heard the sound of a punch. He started toward the gangway where he saw two or three guys beating up Cowan. The fight spilled from the gangway to the front yard. Sanders looked into the gangway where he saw Moore, who was about 15 feet away with his back to Sanders, and Victim, who was two or three feet further down the gangway, facing Moore and Sanders, with his hands in the air. Sanders then saw Victim, his son, get shot in the head; Sanders heard two shots and saw smoke. Sanders also observed Jenkins at the back of the gangway facing towards the front (Jenkins was facing both Sanders and Moore), but only Victim and Moore were in the gangway. Jenkins testified that he saw Moore holding a gun and saw the gun flash. Sanders and Jenkins both identified the defendant in the courtroom as Moore.

Sanders ran to his porch to call 911. As he was dialing, he saw Moore exit the gangway and walk away with the other men who had been beating up Cowan. As they walked past, Sanders asked Moore why he shot his son. Moore started to pull a gun from his waistband, but the others made him put it away. When Sanders got through to 911, he identified the shooter as "the little dude[ ] ... with one arm." The police interviewed Sanders at the police station where they showed him a photograph and physical lineup. In both, Sanders identified Moore as the shooter, and stated that he was "one hundred percent" sure of the identification.

Sanders testified that Victim was approximately 5'9" or 5'10", and Moore was approximately 5'6" or 5'7". Detective Heather Sabin testified that Moore was 5'3" or 5'4". While the charging documents indicated that Moore was approximately 5'1" and 125 pounds, the charging documents were based on Moore's juvenile record.

Assistant Medical Examiner Dr. Jane Turner testified there were two gunshot wounds to Victim: one to his chest and one to his head. His left hand also had entrance and exit wounds. The chest wound showed that the bullet entered the left chest, broke the fifth rib, severed the left lung and the spinal cord, and lodged in the spinal canal. The head wound showed the bullet entered on the left side of his head and exited on the right side of his head. Either injury would have been fatal. Both wounds tracked at a downward trajectory: the bullet path to the head by 0.8 centime-

ters (or approximately a quarter inch), and the bullet path to the chest by several inches.

Firearms examiner Officer David Menendez of the St. Louis Metropolitan Police Department testified to the following. The two shell casings recovered at the scene and the bullet recovered from Victim's body were consistent with a .45 caliber weapon. A .45 caliber handgun is a mid-range weapon in terms of recoil, and although one can use one hand to fire it, using two hands improves accuracy. The way to load a .45 semiautomatic handgun is to place the magazine of cartridges in the grip of the weapon and then pull back the slide, which strips a cartridge off the magazine and introduces it into the barrel, making the gun ready to fire. As the weapon is fired, the slide automatically pulls back and releases the next cartridge into the barrel. One typically uses two hands to load a .45: one to hold the weapon and one to pull back the slide.

During the State's case, the prosecutor noticed that a defense witness, Lamarkis Cowan, was in the courtroom and requested that he be excluded. Defense counsel approached Cowan, who left the courtroom. When defense counsel called Cowan as a witness, however, Cowan was gone. The State later revealed a voicemail from Cowan in which he refused to testify for fear of retaliation. Counsel indicated Moore's decision to testify depended on Cowan's testimony. Counsel requested the court issue a writ of body attachment, and offered Defendant's Exhibit C to document the return of the subpoena served on Cowan.

Exhibit C was titled "Officer's Return" and stated, "[s]erved a copy hereof, in the City of St. Louis, Missouri, on the 7th day of July, 2010 (by reading same) (by delivering a true copy) [at] 8:35 p.m. to the within name[d] witnesses." The signature line for a sheriff's deputy was signed by Joyce Conley, who, counsel explained, used to work for the Circuit Attorney's Office and was not a deputy sheriff. The return did not have a copy of the subpoena served upon Cowan attached. In the section titled Instructions to Apply for Witness Fee, Conley also signed the witness signature line. The trial court found the return invalid, stating, "[t]here's no precision, and you want me to go out and take a citizen of the United States in chains. . . . [I]f you want a body attachment, get one properly. Have [Conley] sign a proper return showing that what she sent, what she served him with; and a copy of this should be attached to the return."

Defense counsel explained that the subpoena form was taken from the circuit court's website and made an offer of proof by calling Conley to the stand. She testified that she had served the subpoena on Cowan, and had signed the Officer's Return both on the signature line for the sheriff's deputy and, mistakenly, on the witness-fee signature line. However, she admitted that she did not have a copy of the subpoena. Counsel again requested that the court order a body attachment against Cowan, arguing further that Cowan had already been under subpoena as a State's witness. The court declined to issue a writ of body attachment and stated,

The Court's understanding of a body attachment is that it must be preceded by evidence of proper service of a subpoena, and not otherwise. . . . My understanding is that I cannot take judicial notice of averments made . . . I am informed that I am not to take judicial notice of absent documents. And I am informed by the case of Peach vs. Grady. . . . For that reason, I am unable to issue the body attachment because I believe that it would be an imposition of the constitutional right of the person

imposed on by the attachment and their legal rights.

The defense moved for a judgment of acquittal at the close of the State's evidence, which was denied, and rested without calling any witnesses. The jury found Moore guilty of the lesser-included offense of murder in the second degree and armed criminal action. The trial court sentenced Moore to life imprisonment in the Missouri Department of Corrections on Count I and three years on Count II, to run concurrently.

Moore moved for a new trial, asserting, as relevant for appeal, that the trial court erred in refusing his request for a writ of body attachment for Cowan, because Conley's testimony showed that Cowan had been served with a subpoena, Cowan's testimony was material, and, after initially appearing pursuant to the subpoena, he fled the courthouse and failed to appear to testify. At a hearing on the motion, defense counsel submitted a portion of Cowan's deposition in which he testified that when he was being beaten up, his back was against the wall. Defense counsel argued this testimony was material in that it showed the fight occurred in the gangway not the yard, which was contrary to Sanders's testimony, and the fight would have impeded Sanders's view of the shooting. The court denied Moore's motion for a new trial. This appeal follows.

## Point I

In his first point on appeal, Moore asserts the trial court erred and abused its discretion in refusing to issue a writ of body attachment against Cowan compelling him to testify as a material defense witness, in that there was sufficient evidence showing that he was subpoenaed to testify. We disagree.

■ We review the denial of a writ of attachment for abuse of discretion. *State*

*v. Kennedy*, 854 S.W.2d 847, 849 (Mo.App. E.D.1993). Section 491.150 provides that a "person summoned as a witness in any cause pending in any court of record, and failing to attend, may be compelled, by writ of attachment against his body, to appear . . . ." Section 491.150, RSMo. (2000). Missouri courts have held that a trial court may not issue a writ of body attachment until the witness has failed to obey a validly executed subpoena, which requires evidence that the witness was properly served. *State v. Jackson*, 806 S.W.2d 426, 429 (Mo.App. E.D.1991) ("[t]here must be evidence that the witness was validly served"); *State v. Woods*, 662 S.W.2d 527, 532 (Mo.App. E.D.1983) ("absent a witness's failure to obey a validly executed subpoena (so that the witness was 'duly summoned'), the court has no authority permitting it to issue a writ of attachment for the body of the witness").

Missouri Rules of Criminal Procedure 26.02 sets out the procedure for subpoenaing witnesses. The subpoena itself must be issued by the clerk under the seal of the court, and "shall state the name of the court and the title of the proceedings and shall command each person to whom it is directed to attend and give testimony at the time and place specified therein." Mo. R.Crim. P. 26.02(a). Service shall be made by delivering a copy of the subpoena to the person named. Rule 26.02(d). Last, if the person serving the subpoena is not an officer, that person "shall" make an affidavit as to the time, place, and manner of service. Rule 26.02(e).

■ The trial court did not abuse its discretion in denying the writ of body attachment because the record does not establish that Cowan failed to obey a validly executed subpoena. No copy of the subpoena was ever before the court to allow determination of whether it complied with Rule 26.02(a). Moreover, Conley failed to

submit a proper return in that she failed to make an affidavit as to the time, place, and manner of service, as required by Rule 26.02(e). We need not decide whether a process server may testify in court in lieu of an affidavit to the Rule 26.02(e) requirements because, without a copy of the subpoena showing what it contained, we cannot say the subpoena was validly executed. A court cannot presume the substance of evidence not before it. Without evidence of a validly executed subpoena, the trial court had no authority to enter a writ of body attachment. *Jackson,* 806 S.W.2d at 429; *Woods,* 662 S.W.2d at 532.

■ Even if there had been a validly executed subpoena, Moore failed to show that Cowan's testimony was material or necessary to the defense. *State v. Sykes,* 611 S.W.2d 278, 280 (Mo.App. E.D.1980) ("[t]he burden is upon the party seeking the presence of the witness to establish the materiality and necessity of the witness"). Moore did not indicate at trial that Cowan's testimony was material or necessary to the defense. *Kennedy,* 854 S.W.2d at 849 (no error in denying body attachment when defendant did not indicate at trial materiality of absent witness's testimony). While he raised the issue of materiality in his motion for new trial and made an offer of proof at the new-trial hearing to show what Cowan's testimony would have been, this evidence was not before the court when it ruled on the motion for writ of body attachment.

Regardless, Cowan's testimony would not have provided Moore with a complete defense. *State v. Reed,* 853 S.W.2d 452, 454 (Mo.App. E.D.1993) (court did not abuse its discretion in denying writ of body attachment when absent witness would not have provided complete defense). Cowan's deposition testimony that his back was against a wall when he was being beaten up does not, as Moore suggests, establish that the fight took place in the gangway, thus blocking Sanders's view of the shooting and impeaching his eyewitness testimony. The wall Cowan referenced could have been the front of the house, as consistent with the testimony of both Sanders and Jenkins. Further, even if the fight had been in the gangway, blocking Sanders's view, Jenkins's testimony that he witnessed Moore fire the gun would not have been affected by Cowan's testimony. Thus Cowan's testimony would not have provided a complete defense to the multiple eyewitnesses' testimony. *Id.*

Point denied.

### Point II

In his second point on appeal, Moore argues that the trial court erred in denying his motions for a judgment of acquittal because there was insufficient evidence to prove that Moore was the person who shot Victim. We disagree.

■ We review challenges to sufficiency of the evidence supporting a criminal conviction for whether sufficient evidence was presented at trial from which a reasonable juror might have found the defendant guilty of all the essential elements of the crime. *State v. Gibbs,* 306 S.W.3d 178, 181 (Mo.App. E.D.2010). We accept as true all evidence supporting the jury's verdict, including all favorable inferences therefrom, and disregard all contrary evidence and negative inferences. *Id.*

A person commits the crime of second-degree murder if he knowingly causes the death of another person, or with the purpose of causing serious physical injury to another person, causes that person's death. Section 565.021.1(1), RSMo. (2000). Likewise, Section 571.015 provides that any person who commits any felony with the aid of a dangerous instrument is guilty of armed criminal action. Section 571.015, RSMo. (2000)

■ Moore argues there was insufficient evidence to support his conviction for

second-degree murder, because the evidence established: (1) that Victim was shot with a handgun that takes two hands to load and fire, but Moore only has one hand; (2) that at 5′1″ and 125 pounds, Moore was too small to have accurately shot a .45 caliber handgun, which is a medium-recoil weapon; and (3) that Victim was shot at a downward tracking angle, but Moore was 5′1″ in height to Victim's 5′9″–5′10″ in height.

This evidence, which was presented to the jury, may have permitted a jury to find reasonable doubt, but it did not so mandate. Officer Menendez testified that one could both load and shoot a .45 caliber pistol with one hand. *See State v. White*, 247 S.W.3d 557, 563–64 (Mo.App. E.D. 2007) ("[s]uch issues as the weight of the evidence, credibility of the witnesses and resolution of conflicts in the testimony are matters for the jury, not matters for appellate review"). Further, the record did not conclusively show that Moore was 5′1″; rather, Sanders testified he was as tall as 5′6″ and Detective Sabin testified he was as tall as 5′4″. Although the charging document listed Moore's height as 5′1″, this number was based on his juvenile record. When faced with conflicting evidence, the jury may choose what to believe and what weight to assign the evidence, and we will not second guess those judgments. *Id.*

The State here presented sufficient evidence for the jury to have found beyond a reasonable doubt that Moore knowingly caused Victim's death or knowingly caused Victim seriously physical injury resulting in his death, while using a dangerous instrument. Sanders testified that he witnessed, while standing at the front of the gangway, Moore and Victim alone in the gangway, and then Victim being shot. Jenkins testified that he witnessed, while standing at the back of the gangway, Moore fire a gun at Victim. Sanders fur-

ther testified that he later saw Moore display a handgun. The testimony of these two eyewitnesses was sufficient to establish that Moore shot Victim. *State v. Williams*, 277 S.W.3d 848, 853 (Mo.App. E.D.2009) (eyewitness testimony alone can be sufficient evidence to support conviction).

Moreover, intent may be proven from inferences drawn from the surrounding circumstances because direct proof of a defendant's intent is rarely available. *State v. Beam*, 334 S.W.3d 699, 707 (Mo. App. E.D.2011). The jury could infer from Moore firing a gun at Victim that it was his intent to kill or inflict serious bodily harm. *State v. Pulley*, 356 S.W.3d 187, 189–90 (Mo.App. E.D.2011) (in context of second degree murder, natural consequence of firing handgun towards victim is great bodily harm, which defendant is presumed to intend); *State v. Yole*, 136 S.W.3d 175, 183 (Mo.App. W.D.2004) (inferring intent to kill or seriously injure from use of deadly weapon on some vital area of victim's body).

On appeal, we must view the evidence in a light most favorable to the verdict and give deference to the jury's credibility determinations. *Gibbs*, 306 S.W.3d at 181; *State v. Brashier*, 301 S.W.3d 598, 599 (Mo.App. W.D.2010). The State's evidence was sufficient to support convictions for second-degree murder and armed criminal action.

Point denied.

### Conclusion

The judgment of the trial court is affirmed.

CLIFFORD H. AHRENS, P.J. and ROY L. RICHTER, J., concur.