**STATE of Missouri, Respondent,**

v.

**Freddie BATISTE, Jr., Appellant.**

**No. WD 68396.**

Missouri Court of Appeals,
Western District.

July 15, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 2, 2008.

Application for Transfer Denied
Oct. 28, 2008.

Irene C. Karnes, Columbia, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, MO, Shaun Mackelprang and Cory Lee Atkins, Office of Attorney General, Jefferson City, MO, for respondent.

PAUL M. SPINDEN, Presiding Judge.

Freddie Batiste, Jr., appeals the circuit court's judgment convicting him, after a jury trial, of abusing a child, in violation of Section 568.060, RSMo 2000. He complains of the circuit court's unjustified admission of evidence of prior bad acts and uncharged crimes. We reverse the circuit court's judgment and remand for a new trial.

The charge against Batiste grew out of an incident on March 27, 2006, in connection with Batiste's discipline of J.A.V., the three-year-old son of a woman with whom Batiste was cohabitating in St. Joseph. The State presented evidence that Batiste disciplined J.A.V. after the child's 12-year–old brother told him that J.A.V. had misbehaved all day while in the care of a babysitter. As discipline, Batiste laid J.A.V. face down on a kitchen countertop and beat his buttocks with a wooden board before sending him to his bed. When J.A.V. continued to cry, Batiste punished

him further by hitting him a few more times. The next day, the babysitter noticed that J.A.V. appeared to be injured. She examined him and saw numerous injuries on his buttocks. She discussed the injuries with J.A.V.'s mother who later decided, after arguing with Batiste over the matter, to call police. Officers arrested Batiste, and the State charged him with one count of child abuse.

Before trial on the charge, Batiste filed a motion in *limine* asking the circuit court to prohibit the State from introducing evidence that Batiste had abused J.A.V. before the charged incident. The circuit court overruled the motion, and, at trial, the State introduced evidence that about a month before the charged incident Batiste had abused J.A.V. by whipping him with a belt, fracturing his arm, and hitting him with an extension cord. Batiste objected to the admission of this evidence, but the circuit court overruled the objection.

In challenging his conviction in this appeal, Batiste's only point is that the circuit court erred in overruling his objections to evidence of his prior abuse of J.A.V. He asserts that the State wrongfully used the evidence of uncharged crimes and prior bad acts solely to establish his propensity to abuse J.A.V.

■ Before addressing this point, we must address the State's contention that Batiste did not preserve this issue for our review because his point relied on is deficient. The State claims that, in violation of Rule 84.04(d), Batiste's point relied on included multifarious points. Although a point relied on violates Rule 84.04(d) when it sets out multiple, unrelated issues— *State v. Daggett,* 170 S.W.3d 35, 42 (Mo. App.2005)—we disagree that Batiste's brief violates Rule 84.04(d). Although Batiste challenges the introduction of numerous exhibits and the testimony of numerous witnesses in a single point, the exhibits and testimony all relate to one issue:

whether or not the circuit court erred in admitting evidence of Batiste's prior conduct. This does not violate Rule 84.04(d). Furthermore, the purpose of a point relied on is to give notice to the parties and this court of the precise issue that the appellant is raising. *Lyles v. Robert Half Corporation,* 219 S.W.3d 854, 856 (Mo.App. 2007). Batiste's point relied on is sufficient to give the parties and this court notice of his exact argument. Batiste's point is preserved.

■ As to the merits of Batiste's point, we afford the circuit court broad discretion in determining the evidence's relevance and admissibility. *State v. Campbell,* 143 S.W.3d 695, 700 (Mo.App.2004). We review for an abuse of discretion: We will affirm the circuit court's decision to admit or to exclude evidence unless the circuit court abused its discretion. *Id.* A ruling that is clearly against the logic of the circumstances and is arbitrary and unreasonable is an abuse of discretion. *Id.*

Article 1, Section 17, of the Missouri Constitution says that "no person shall be prosecuted criminally for felony or misdemeanor otherwise than by indictment or information." Article 1, Section 18(a) of the Constitution says, "That in criminal prosecutions the accused shall have the right ... to demand the nature and cause of the accusation[.]" Based on these provisions, well-established law requires the State to try a defendant only for the offense for which he is on trial. *State v. Ellison,* 239 S.W.3d 603, 606 (Mo. banc 2007). This precludes the State from unjustifiably introducing evidence of a defendant's prior, uncharged crimes or bad acts. *Id.* This rule recognizes the significant risks that attend such evidence:

(1) [T]hat [it] will mislead or confuse the jury, (2) that the jury will give undue weight to the "if he did it once, he'll do it again" inference, (3) that the defendant

will be made to defend, not just against the charges brought, but against all of his prior, similar behavior which, for whatever reason, was not prosecuted by the State, and (4) that the jury, in its rush to punish the defendant for his past acts—which the jury must infer have gone unpunished—may overlook the fact that the State has failed to prove the defendant was guilty of the charges brought.

*State v. Berwald,* 186 S.W.3d 349, 358 (Mo. App.2005) (quoting *State v. Bernard,* 849 S.W.2d 10, 22 (Mo. banc 1993)).

■ Evidence of prior bad acts or uncharged criminal acts is justified when it is offered for purposes other than to establish the defendant's propensities to commit the crime with which he is charged. *Ellison,* 239 S.W.3d at 607. These purposes include establishing motive, intent, absence of mistake or accident, identity, or a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other. *Id.*

> Evidence of prior criminal acts may be admissible for these alternate purposes only if that evidence is both "logically relevant, in that it has some legitimate tendency to establish directly the accused's guilt of the charges for which he is on trial, and if the evidence is legally relevant, in that its probative value outweighs its prejudicial effect."

*Id.* (quoting *State v. Burns,* 978 S.W.2d 759, 761 (Mo. banc 1998)).

The State charged Batiste with abusing a child in violation of Section 568.060(1). This statute says, "A person commits the crime of abuse of a child if such person ... [k]nowingly inflicts cruel and inhuman punishment upon a child less than seventeen years old[.]" The State's information averred, "[O]n or about the 27th day of March, 2006, in the County of Buchanan, State of Missouri, the defendant knowingly inflicted cruel and inhuman punishment upon minor J.A.V., a child less than seventeen years old, by striking the child with a board resulting in serious bruising and swelling."

The State, therefore, was duty bound to present only evidence that was probative of whether or not Batiste used a board to cause serious bruising and swelling of J.A.V.'s body on March 27, 2006. At trial, however, the State introduced evidence of other examples of abuse against J.A.V. J.A.V.'s brother testified that a month before the incident for which Batiste was charged, he saw Batiste whip J.A.V. with his belt and forced J.A.V. to carry a bleach container as additional punishment. The brother said that J.A.V. held his hand in a "funny" manner, suggesting that it was injured. The State also presented evidence that, in addition to the "serious bruising and swelling," J.A.V. had extensive burns and scars on his hand. Jennifer Capps, a social worker employed by the State, testified that J.A.V.'s arm was bruised, swollen, and missing some skin. Capps testified that J.A.V.'s mother had told her that the injuries resulted from Batiste's hitting J.A.V.'s arm with an extension cord, causing it to swell, and that blisters formed when she had applied a saltwater pack to the swollen area. Capps said that the mother had told her that the skin was lost from the arm when she "popped" the blisters. J.A.V.'s babysitter testified that J.A.V.'s arm appeared to be burned. The State also presented the testimony of Charlotte Moore, a pediatric radiologist, that J.A.V.'s right wrist had suffered a fracture and appeared to be healing without benefit of medical intervention. It further presented the testimony of Katie Yeldell, a nurse at Children's Mercy Hospital, that J.A.V. had suffered numerous injuries, scars, and abrasions on his arms and back that were

consistent with child abuse. The State introduced photographs of these injuries.

The State had not charged Batiste with causing these injuries. It was not probative of the injuries that the State alleged that Batiste caused on March 27, 2006. It, thus, was evidence of prior uncharged crimes and bad acts and was inadmissible unless it fit in one of the exceptions that justified its admission.

The State attempted to justify admission of the evidence on the ground that it established Batiste's motive to commit the alleged crime. For example, in response to Batiste's objection to some of the evidence, the prosecutor argued, "We are entitled to show this defendant's motive to cause harm to the same victim under similar or same circumstances. That's exactly what we have with [this testimony]." The circuit court erred in overruling Batiste's objection.

Motive is the "[c]ause or reason that moves the will and induces action" and "[a]n inducement, or that which leads or tempts the mind to indulge a criminal act." BLACK'S LAW DICTIONARY 914 (5th ed.1979). The evidence that Batiste had committed previous acts of abuse against J.A.V. did not explain why he abused J.A.V. on March 27, 2006. Any notion that it was offered to prove motive was erroneous.

The evidence had no other discernible purpose than to establish that Batiste had abused J.A.V. in the past and was, therefore, likely to have committed the charged crime. In other words, its purpose was to show that Batiste had a propensity to abuse J.A.V., and its obvious purpose was to persuade the jury to convict him based on his propensities. *State v. Douglas*, 917 S.W.2d 628, 631 (Mo.App.1996). At the hearing on the motion in *limine*, the prosecutor all but conceded as much:

> So the case they cited, absolutely the right one, the Davis case, which is 2006, and the tendency to directly establish

the accused guilt of the charges for which he is on trial is exactly the point of those incidents that he had previously committed against the same victim. So same defendant, same victim, I think all of the case law supports the admissibility of that. And I don't think there's any case law that doesn't.

> So we certainly would intend to offer that. It will be prejudicial, we hope. That's the whole reason in introducing it is because it does show the tendency of this defendant to beat on this same victim.

Given that this was the sole reason for introducing these prior bad acts, the circuit court erred in overruling Batiste's objections.

 Having established that the circuit court erred, we now turn to the issue of whether or not that error was prejudicial. For an error to be prejudicial, the defendant must establish a reasonable probability that, had the evidence been excluded, the outcome at trial would have been different. *State v. Barriner*, 34 S.W.3d 139, 150 (Mo. banc 2000). "A finding of outcome-determinative prejudice 'expresses a judicial conclusion that the erroneously admitted evidence so influenced the jury that, when considered with and balanced against all of the evidence properly admitted, there is a reasonable probability that the jury would have reached a different conclusion but for the erroneously admitted evidence.'" *Id.*

In determining whether or not the evidence was outcome determinative, the Supreme Court has instructed us to examine numerous factors, including the similarity of the charged offense to the improperly admitted evidence; the amount of evidence that was erroneously admitted and extent to which the parties referred to or emphasized it during trial; and whether or not the erroneously admitted evidence was ad-

mitted inadvertently. *Id.* at 150–51. Applying these factors to Batiste's case, we conclude that the erroneously admitted evidence was prejudicial.

The evidence of Batiste's prior discipline and J.A.V.'s other injuries was very similar to the charged offense of child abuse. The State's evidence of uncharged crimes included evidence that Batiste committed at least two acts of abusing J.A.V.: fracturing his right wrist while disciplining him and hitting him with an extension cord to the point of causing his arm to swell and to bruise. The State also introduced evidence that J.A.V. had numerous other scars and abrasions on his back and arms. Although the methods that Batiste used to abuse J.A.V. were different, the incidents were similar to the charged crime. Both involved abuse against the same victim and occurred within a few weeks of each other.

Concerning the second factor—how much evidence was erroneously admitted and extent to which the parties referred to and emphasized it during the trial—the amount of evidence of prior crimes and bad acts was substantial. The State introduced the belt that Batiste used to whip J.A.V. a month before the charged incident. It also introduced photographs depicting the various injuries to J.A.V.'s arms and back. Of the nine witnesses that the State called, the prosecuting attorney asked five of them a substantial number of questions regarding these prior acts. An uninformed observer of the trial would have had reason to believe that Batiste was on trial for committing all of these prior acts. The State highlighted the prior acts during its opening statement and closing argument. During his opening statement, the prosecuting attorney said:

> You will hear testimony from [J.A.V.'s brother] about earlier beatings that this defendant had administered against this little three-year-old boy while they were living in Garden City, Kansas, resulting in injuries, one of which you will hear medical testimony about that had resulted in a fracture of a bone in the right arm that occurred to [J.A.V.] during the administration of one of these earlier whippings or beatings.
>
> And the doctors at Mercy will tell you, and the evidence will be uncontradicted, I believe, that no medical attention was ever sought, although [J.A.V.'s brother] will tell you that he knew that his brother's arm was hurt. He obviously didn't know the extent to which it was hurt. Mom did not take him for medical attention.
>
> You will hear the doctors testify as to the type of break that it was, to the fact that it had, in part, already began to recalcify or to heal, and without being able to give you an exact time frame in which that degree of healing would have occurred, that it is entirely consistent with the time frame that will be laid for you by [J.A.V.'s brother] as to the prior injuries by this defendant to [J.A.V.].
>
> You will hear evidence of their findings upon examination of linear marks, which are basically just parallel marks that they found on [J.A.V.]. Again, [J.A.V.'s brother] will testify directly about prior whippings that were administered while they were living in Garden City, Kansas, by this defendant toward [J.A.V.] with the use of a belt, which as I indicated earlier, we also know was something that he had with him at the time he brought [J.A.V.] back on the incidents here in St. Joseph.
>
> The medical experts will tell you that those markings on [J.A.V.] are medically entirely consistent with the account of how they were incurred that will be given to you by [J.A.V.'s brother].

In his rebuttal during closing arguments, the prosecutor said:

This man who took those instruments and hit a three-year-old boy and this man deserves to be called a parent? Not on any earth in which I've ever lived.

Linear marks. Remember linear marks, the medical testimony. Hitting him with an object. Is it consistent with getting hit with a belt? Yes, it is. Am I trying to razzle-dazzle you by telling you about other incidents of abuse by this man against that child? That's admissible because it shows his attitude and his motive toward[.]

During his rebuttal argument, the prosecutor used this evidence to establish that, because the medical evidence corroborated the account of J.A.V.'s brother concerning the beating in Garden City, Kansas, he was telling the truth about witnessing the abuse. Hence, this factor weighs in favor of reversal.

Finally, under the factor in which we are to determine whether or not the evidence was admitted inadvertently, we have no doubt that the prosecutor introduced the evidence intentionally. During the hearing on Batiste's motion in *limine*, the prosecuting attorney admitted that he was introducing this evidence to establish Batiste's tendency to attack J.A.V. Introduction of the evidence was not inadvertent.

The State asserts that, notwithstanding the quantity and nature of the evidence, it was not prejudicial because the overwhelming evidence established that Batiste was responsible for J.A.V.'s injuries. At trial, Batiste conceded that someone had beaten J.A.V. The only issue at trial was whether or not it was Batiste who had caused J.A.V.'s injuries. To establish that Batiste caused the injuries, the State relied primarily on the testimony of J.A.V.'s brother who testified that he walked into the kitchen and saw Batiste whip J.A.V. with a board. The State also called J.A.V.'s mother who testified that she was

in the living room during this incident and heard J.A.V. screaming and hollering. Without the evidence of prior bad acts, the evidence was, indeed, substantial, which makes the prosecuting attorney's use of the prior bad acts even more perplexing. The State had more than ample evidence to make a submissible case against Batiste without the tainted evidence.

That non-offending evidence was substantial is not a sufficient factor alone to avoid reversal. The Supreme Court has instructed:

> The question is not ... whether the state made a submissible case, but whether the prejudice resulting from improper admission of evidence is outcome-determinative, requiring reversal. Put another way, the question is whether the evidence had an effect on the jury's deliberations to the point that it contributed to the result reached. Even if reasonable minds may differ with respect to whether there is overwhelming evidence of guilt in this case, that is not the only consideration.

*Id.* at 151–52 (footnote omitted). Although the State made a submissible case against Batiste, we conclude that, in light of the quantity and nature of the evidence, the offending evidence was significant enough to have affected the jury's deliberations.

This is especially true in light of the debate concerning credibility of the victim's brother during closing arguments. Although Batiste did not call a witness to rebut the brother's testimony, the prosecuting attorney felt a need in his closing argument to argue that he had no motive to lie about seeing Batiste beat his brother. In response to this inference, in her closing argument, Batiste's attorney attempted to impeach the brother's and mother's testimony by pointing out that they had reported Batiste's conduct to police only after finding out that he was

going to move away. Batiste's defense was that the victim's mother and brother had lied to get even with Batiste for abandoning them. The defense also pointed out minor inconsistencies between the brother's and mother's testimony. In response, the prosecuting attorney believed that he needed to emphasize during his rebuttal argument the brother's testimony regarding the prior bad acts to rehabilitate his credibility:

And why are these linear marks from previous abuse, why are those important to you? If this is a conspiracy, how is it that [J.A.V.'s brother] is able to tell you things that he has witnessed in the past which are then borne out in the testimony of the medical people who come in to testify?

The record, therefore, establishes that the parties believed that the brother's credibility was a key issue for the jury. We, therefore, conclude that, given the vast amount of inadmissible evidence and the significance that the parties attached to it concerning the brother's credibility, the offending evidence was prejudicial; hence, we reverse the circuit court's judgment and remand the case for a new trial.

JAMES E. WELSH, and ALOK AHUJA, JJ., concur.