

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | |
|---|---|
| STATE OF MISSOURI, | ) |
| | ) |
| Respondent, | ) |
| | ) |
| v. | )   WD75698 |
| | ) |
| JOSEPH B. SPROFERA, | )   Opinion filed:  March 4, 2014 |
| | ) |
| Appellant. | ) |

**APPEAL FROM THE CIRCUIT COURT OF CLAY COUNTY, MISSOURI**
**The Honorable Larry D. Harman, Judge**

Before Division Four:  James E. Welsh, Chief Judge,
Joseph M. Ellis, Judge and Gary D. Witt, Judge

Appellant Joseph B. Sprofera appeals from his conviction of one count of statutory rape in the first degree, § 566.032,[1] and the sentence subsequently imposed by the Circuit Court of Clay County.  For the following reasons, the judgment is affirmed in part and reversed and remanded in part.

In March of 2012, Appellant was charged by information in lieu of an indictment with one count of statutory rape in the first degree.  The charge arose out of allegations that between July 1, 2002, and August 31, 2002, Appellant engaged in sexual intercourse with his adopted daughter J.M.S., who was then less than fourteen years old.

---

[1] All statutory citations are to RSMo 2000 unless otherwise noted.

On August 6, 2012, the case proceeded to trial in the Circuit Court of Clay County.[2] J.M.S. testified that when she was about six or seven years old, Appellant began touching her inappropriately while she slept. She further testified that the abuse worsened over time, although there were years when Appellant did not touch her. J.M.S. then testified that Appellant raped her in the summer before she started the eighth grade – which she believed to be 2002 – making her thirteen years old at the time.[3] J.M.S. explained that while her mother[4] was away at a teaching conference, Appellant came downstairs to her bedroom and shut and locked the door. Appellant told J.M.S. to take off her clothes and get on the bed. After she complied, Appellant got on top of her and inserted his penis into her vagina. J.M.S. further explained that in the days following the incident, Appellant again forced her to engage in sexual intercourse, this time in his bedroom. J.M.S. stated that she complied with Appellant's commands out of fear because Appellant had physically abused her, her mother, and her siblings. She went on to explain that Appellant "wasn't very nice" toward her and called her derogatory names, such as slut, whore, and bitch. She then described an incident in which she observed Appellant throw her mother out of the house in just her bra and pants during a fight.

J.M.S.'s mother also testified at trial. She explained that she was a kindergarten teacher and that, prior to the beginning of most school years, she would attend a teaching conference or retreat that typically required her to stay overnight. She further testified that Appellant would remain at home with the children while she was away.

---

[2] The charged offense occurred in Lafayette County, Missouri. The case, however, was transferred to the Circuit Court of Clay County upon a change of venue request by Appellant.

[3] J.M.S. testified that she was born on July 7, 1989.

[4] J.M.S. refers to her adoptive mother as her mother throughout the record. For consistency purposes, we will do the same.

She also relayed an incident in which Appellant became violent toward her after she suggested that Appellant's sister stay with him and the children while she was away for a teaching conference.

Prior to the case being submitted to the jury, the State gave its closing argument. During its closing argument, the prosecutor misstated that the jury should find Appellant guilty of statutory sodomy in the first degree. The trial court interrupted the prosecutor and informed her she had misspoken as to the charged offense. The prosecutor corrected herself, then remarked, in front of the jury, that "It's unfortunate that this is not the only case of statutory rape or sodomy that sits in a box over (indicates) here to be taken up today." Following the comment, the trial court explained to the jury that he had other cases involving statutory rape and sodomy to take up that day and those cases were "not related to [Appellant] in this trial."

The case was subsequently submitted to the jury, which convicted Appellant of first-degree statutory rape. At Appellant's sentencing hearing, the trial court reiterated its finding that Appellant was a prior offender based upon his September 1, 2010 conviction for second-degree statutory sodomy. The court then sentenced Appellant to life imprisonment but did not pronounce whether the life sentence was to be served consecutive to or concurrent with Appellant's previous sentence for his 2010 conviction. Nevertheless, on September 27, 2012, the trial court entered its written judgment of conviction and sentence stating that "the Court sentences and commits [Appellant] to the Missouri Department of Corrections for a period of Life imprisonment. Sentence to be served consecutive with other sentences." The trial court also failed to memorialize its finding that Appellant was a prior offender in its written judgment. Appellant did not

3

file any post-trial motions challenging his classification as a prior offender or contesting the trial court's imposition of a consecutive sentence in its written judgment.

Appellant now raises five points of error on appeal. In his first point, Appellant contends that the trial court erred in denying his motion for judgment of acquittal because the State's evidence was insufficient to establish, beyond a reasonable doubt, that J.M.S. was less than fourteen years old at the time of the charged offense. When reviewing a challenge to the sufficiency of the evidence, our "review is limited to determining whether there was sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." *State v. Miller*, 372 S.W.3d 455, 463 (Mo. banc 2012) (internal quotation omitted). "We accept as true all evidence supporting the jury's verdict, including all favorable inferences therefrom, and disregard all contrary evidence and negative inferences." *State v. Moore*, 359 S.W.3d 520, 524 (Mo. App. E.D. 2012). "When reviewing the sufficiency of evidence supporting a criminal conviction, th[is] Court does not act as a 'super juror' with veto powers." *Miller*, 372 S.W.3d at 463. Instead, we assess "whether, in light of the evidence most favorable to the State, any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt." *Id.*

"A person commits the crime of statutory rape in the first degree if he has sexual intercourse with another person who is less than fourteen years old." **§ 566.032**. Thus, the State had to present sufficient evidence that Appellant had sexual intercourse with J.M.S. who was then less than fourteen years old.

Appellant avers that the State failed to present sufficient evidence that J.M.S. was less than fourteen years old at the time of the charged offense. Appellant

4

acknowledges that the State elicited testimony from J.M.S. that she was thirteen at the time of the charged offense. Nevertheless, Appellant contends that J.M.S. never would have testified that she was thirteen save for the prosecutor's coercive pressure and that the logical extension of the evidence is that the alleged incident occurred in 2003 when J.M.S. was fourteen years old. In viewing the evidence in the light most favorable to the verdict, however, there is sufficient evidence from which a reasonable juror could find beyond a reasonable doubt that J.M.S. was less than fourteen years old at the time of the charged offense.

On the State's direct examination of J.M.S., the following colloquy occurred:

Q:     Okay. What else, if anything happened?

A:     About the summer of – was it 2003? It was before I started eighth grade, [Appellant] raped me.

Q:     You told the jury that your birthday is July 7th of '98 [sic]?[5]

A:     Yes.

Q:     Do you recall how old you were when he raped you?

A:     Thirteen

Q:     And had you been 13 for awhile, had you just turned 13?

A:     I had just turned 13. Or was it 14. I think I was 14. I had just turned 14. I think it was one of those two. It was, it was before eighth grade.

Q:     It was before eighth grade?

A:     Yes.

Q:     Does that help you with the age, or do you need a pencil and paper to work that out?

---

[5] J.M.S. previously testified she was born on July 7, 1989. Both parties acknowledge that fact in their respective briefs.

A:      I was 14.

Q:      Do you recall giving deposition testimony in this case?

A:      Yes, I do.

Q:      Do you recall what you said was your age at that time?

A:      No. I think it was 14 though.  Wasn't it, it was 2003 right?

Q:      Well, I can't give you the answers, which is why I what [sic] to help you through that.

A:      Yeah.

Q:      What I want you to do is take a moment, take all the time you need. We want to be as accurate as possible, and I'm going to ask you to, using your date of birth and your age, determine the year.  And if you need to take a break, just let us know.

A:      2002/2003

Q:      I'm sorry, what was that?

A:       2002/2003 school year –

Q:      Okay.

A:      – is when I think it has to be because 2003/2004 school year I was in high school.

Q:      Okay, alright.  So at the beginning of the 2002 school year?

A:      Yes.

Q:      And if you add 13 to 1989, what 2002?

A:      2002, yeah.

Q:      Okay, are you confident then that you were 13?

A:      Yes.

Such testimony reflects that J.M.S. consistently testified that the rape occurred before she entered the eighth grade.  Upon further questioning from the prosecutor, J.M.S.

6

deduced that she started eighth grade in 2002, which would have made her thirteen at the time of the incident. J.M.S. further testified that she was confident that she was thirteen at the time of the charged offense. Accordingly, there was sufficient evidence from which a reasonable juror could conclude that J.M.S. was less than fourteen at the time of the charged offense.

Appellant further contends that a reasonable juror could not conclude J.M.S. was less than fourteen years old at the time of the alleged incident because the logical extension of the evidence is that the rape occurred in 2003 when J.M.S. was fourteen years old. In support of his contention, Appellant points to testimony from J.M.S. that she believed Appellant raped her while her mother was at a teacher's conference in San Diego. J.M.S.'s mother later testified that the conference in San Diego occurred in the summer of 2003. However, subsequent testimony from J.M.S. indicated that her mother regularly attended teaching conferences or retreats before the start of each school year and J.M.S. could not be sure the rape occurred when her mother was at the San Diego conference. Furthermore, any contrary testimony regarding the San Diego conference or negative inferences drawn therefrom must be ignored under our standard of review. *See* **Moore**, 359 S.W.3d at 524 ("We accept as true all evidence supporting the jury's verdict, including all favorable inferences therefrom, and disregard all contrary evidence and negative inferences."). Thus, it follows that there is sufficient evidence in the record from which a reasonable juror could find, beyond a reasonable doubt, that J.M.S. was younger than fourteen years old when the rape occurred despite the evidence adduced regarding the San Diego conference. Point denied.

In his second point, Appellant asserts that the trial court erred by failing to *sua sponte* declare a mistrial when the State repeatedly elicited testimony regarding Appellant's uncharged crimes and prior bad acts.[6] Appellant concedes that he failed to preserve this issue for appellate review by failing to object to the admission of such evidence at trial.[7] Nevertheless, he requests plain error review pursuant to Rule 30.20.

Rule 30.20 provides that "plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Thus, plain error review constitutes a two-step process. ***State v. Ray***, 407 S.W.3d 162, 170 (Mo. App. E.D. 2013). First, "we determine whether there is, indeed, plain error, which is error that is evident, obvious, and clear." ***Id.*** (internal quotation omitted). Then, if plain error has occurred, we consider "whether a manifest injustice or miscarriage of justice has . . . occurred as a result of the error." ***Id.*** (internal quotation omitted).

Appellant contends that the State improperly admitted evidence of Appellant's prior bad acts and uncharged crimes in that the State elicited testimony regarding Appellant sexually abusing J.M.S. prior to and after the charged incident as well as testimony regarding Appellant physically abusing J.M.S., her siblings, and her mother. Appellant asserts that such evidence had no probative value and that the State introduced such evidence only to put his criminal propensities before the jury. Thus, Appellant contends the trial court should have *sua sponte* intervened and declared a mistrial when such testimony was elicited.

---

[6] Alternatively, Appellant argues that the trial court should have stricken the testimony regarding uncharged prior bad acts and admonished the jury to ignore such testimony.

[7] Appellant states in a footnote that "[d]efense counsel did object to one instance of prior uncharged crimes or bad acts." However, Appellant does not request we review that instance for abuse of discretion.

8

"It has long been established . . . that a defendant has the right to be tried only for the offense for which he is on trial." *State v. Berwald*, 186 S.W.3d 349, 358 (Mo. App. W.D. 2005) (internal quotation omitted). Thus, "evidence of prior bad acts is inadmissible to show the propensity of the defendant to commit the crime for which he is charged." *State v. Winfrey*, 337 S.W.3d 1, 11 (Mo. banc 2011). Nevertheless, "evidence of the defendant's prior misconduct is admissible when it is logically relevant – it has some legitimate tendency to directly establish the accused's guilt of the charges for which he is on trial [–] and when it is legally relevant – its probative value outweighs its prejudicial effect." *State v. Uptegrove*, 330 S.W.3d 586, 593 (Mo. App. W.D. 2011).

Missouri courts have found evidence of prior misconduct to "be admissible to prove motive, intent, the absence of mistake or accident, a common plan or scheme, or [the] identity of the person charged with committing the crime." *State v. Glover*, 389 S.W.3d 299, 301 (Mo. App. S.D. 2013). Additionally, "evidence of uncharged crimes that are part of the circumstances or the sequence of events surrounding the offense charged may be admissible to present a complete and coherent picture of the events that transpired." *Miller*, 372 S.W.3d at 474 (internal quotation omitted).

The State contends that evidence regarding Appellant sexually abusing J.M.S. prior to and after the charged incident is relevant in that it established Appellant's motive and provided the jury with a complete picture of the surrounding circumstances of the charged offense. Numerous Missouri courts have held that, in cases involving sexual crimes against a child, "prior sexual conduct by a defendant toward the victim is admissible as it tends to establish a motive, that is satisfaction of defendant's sexual desire for the victim." *State v. Primm*, 347 S.W.3d 66, 70 (Mo. banc 2011) (internal

9

quotation omitted). In fact, this Court has previously found that testimony regarding a defendant's progressive pattern of sexually groping the victim from a young age "served to present a complete picture of the events that transpired" and was relevant in determining whether the defendant eventually had sexual intercourse with the victim. *State v. Sprofera*, 372 S.W.3d 17, 19-20 (Mo. App. W.D. 2012).

Here, evidence that Appellant began touching J.M.S. inappropriately when she was approximately six or seven years old and that such abuse continued to worsen over time tends to establish Appellant's motive for the rape.[8] Additionally, J.M.S.'s testimony regarding a second incident of rape occurring in the days immediately following the charged incident provided the jury with a complete and coherent picture of the circumstances and events that transpired surrounding the charged offense. Thus, no plain error occurred in the introduction of such evidence.

Appellant further asserts that the trial court should have *sua sponte* intervened when the State elicited testimony regarding Appellant physically and verbally abusing J.M.S., her mother, and her siblings. However, the Missouri Supreme Court has found such evidence admissible under similar circumstances. *See Miller*, 372 S.W.3d at 474.

In *Miller*, a victim of sexual abuse testified on direct that the defendant had physically abused her mother and siblings on occasion. *Id.* In finding that the introduction of such evidence did not constitute an abuse of discretion, the Court explained that prior uncharged instances of physical abuse by a defendant has been found to be admissible in that it can explain a victim's delay in reporting the abuse. *Id.*

---

[8] To the extent that Appellant complains of the State eliciting testimony from J.M.S.'s mother that Appellant became violent toward her when she suggested Appellant's sister stay with him and the children while she was away at a teaching conference, such evidence of prior misconduct would likewise be relevant in establishing Appellant's motive and intent toward the victim.

10

Thus, it concluded that such evidence gave "a complete and coherent picture of the events that transpired, more specifically why [the victim] did not speak up about the abuse that had been going on for eight years." *Id.* The Court further explained that such evidence "described the circumstances surrounding the abuse by giving the jury a better overall picture of the relationship between [the victim] and [the defendant] during the instances of sexual abuse for which he was charged, and helped explain how it was possible for the abuse to go undetected by other members of the family." *Id.*

Similarly, in this case, evidence of Appellant's prior instances of uncharged physical and verbal abuse was used to establish J.M.S.'s fear of Appellant and her delay in reporting the abuse. In explaining that she complied with Appellant out of fear, J.M.S. testified that Appellant physically and verbally abused her, her siblings, and her mother. In doing so, she described one incident in which she personally observed Appellant physically abusing her mother and further relayed that Appellant regularly addressed her by using derogatory and offensive language. The State elicited further testimony from J.M.S. on redirect that she had stated several times in a deposition that she did not report the rape because she feared Appellant. Accordingly, the record reflects that the evidence regarding prior acts of uncharged physical abuse was used to establish a complete and coherent picture of J.M.S's relationship with Appellant and to explain J.M.S.'s delayed reporting. Thus, we cannot say the trial court plainly erred in failing to *sua sponte* intervene when the State elicited such testimony.[9] Point denied.

---

[9] Appellant relies on **State v. Batiste**, 264 S.W.3d 648 (Mo. App. W.D. 2008), in support of his contention that the previous incidents of uncharged physical abuse constituted inadmissible evidence and served no discernable purpose other than establishing Appellant's criminal propensities. *Batiste*, however, involved a situation in which the defendant was charged with child abuse for beating the victim with a wooden board and the State elicited testimony at trial that the defendant had abused the victim one month prior by whipping him with a belt and an extension cord. *Id.* at 649-50. Although the State attempted to justify the admission of such evidence on the basis that it established the defendant's motive to commit the alleged

11

In his third point, Appellant contends that the trial court erred by failing to *sua sponte* declare a mistrial because the State engaged in prosecutorial misconduct when the prosecutor erroneously stated that Appellant was guilty of the offense of statutory sodomy and then, in trying to correct her error, made a reference to other statutory rape and sodomy cases that were to be taken up by the trial court that day. Appellant avers that the trial court's *sua sponte* admonitions to the jury were insufficient to neutralize the prejudice to Appellant because the jury could still believe that the separate statutory rape and sodomy cases referenced by the prosecutor involved Appellant. Appellant concedes that he failed to properly preserve this issue by failing to request a mistrial at the time the comment was made. Thus, he requests plain error review.

"[A]ppellate courts are wary of claims that a trial court erred in failing to declare a mistrial *sua sponte* in a criminal case." *State v. Hitchcock*, 329 S.W.3d 741, 749 (Mo. App. S.D. 2011) (internal quotation omitted). "Granting a mistrial is a drastic remedy and should be exercised only in extraordinary circumstances where the prejudice to the defendant cannot be removed any other way." *State v. Garvey*, 328 S.W.3d 408, 416 (Mo. App. E.D. 2010) (internal quotation omitted). "Trial judges are not expected to assist counsel in trying cases, and trial judges should act *sua sponte* only in exceptional circumstances." *State v. Barker*, 410 S.W.3d 225, 235 (Mo. App. W.D. 2013) (internal quotation omitted). Thus, "a trial court's decision not to grant a mistrial *sua sponte* will not be reversed as plain error absent a clear showing of a manifest abuse of discretion,

---

crime, we found that the "evidence had no other discernable purpose than to establish that [the defendant] abused [the victim] in the past and was, therefore, likely to have committed the charged crime." *Id.* at 652. Thus, unlike the present case, *Batiste* did not involve a victim of sexual abuse, nor did it address the introduction of prior uncharged bad acts to explain a victim's delayed reporting of the offense. *Batiste*, therefore, is distinguishable from this case.

12

which resulted in manifest injustice or a miscarriage of justice." *Id.* (internal quotation omitted).

Here, there is no clear showing that the trial court's failure to *sua sponte* declare a mistrial resulted in manifest injustice or a miscarriage of justice. During closing argument, the prosecutor made the following comment:

> The truth in this case is like a nugget of gold. It doesn't matter whether it's a small nugget or a large nugget, the point is, it's solid, it's there and all the mud in the world that you want to pile on top of it doesn't change the fact, the truth remains. And the truth in this case is that [Appellant] *is guilty of statutory sodomy in the first degree* for raping his 13 year old daughter.
> You will work in the jury room, you will remove the –

(Emphasis added). The trial court immediately interrupted the prosecutor to inform her that she misspoke about the charged offense and instructed her to correct the misstatement.[10] The prosecutor corrected herself and then stated, "It's unfortunate that this is not the only case of statutory rape or sodomy that sits in a box over (indicates) here to be taken up today." The trial court then stated:

> Let me interrupt you again, I'm sorry; that references, I have some other cases today, this is not the only case of statutory sodomy and statutory rape. That is not related to [Appellant] in this trial. I mentioned to you yesterday I had another case earlier thing morning, and I just want to clear up any potential misunderstanding there.

Defense counsel did not request a mistrial following the prosecutor's comment.

Appellant avers that only a mistrial could cure the prosecutor's misconduct in making such a statement because the trial court's admonition did not make it clear to the jury that the other cases of statutory sodomy to be taken up did not involve

---

[10] Before the trial court intervened, defense counsel began to object to the prosecutor misstating the charged offense. After the trial court instructed the prosecutor to correct her misstatement, it asked defense counsel if its instruction to the prosecutor satisfied his concern, to which he replied, "Yes." Affirmatively acquiescing to an action by the trial court waives even plain error review. *State v. Johnson*, 284 S.W.3d 561, 582 (Mo. banc 2009).

13

Appellant. Appellant arrives at that conclusion, however, only after a parsed reading of one sentence in the trial court's admonition – that the other sodomy cases were "not related to [Appellant] *in this trial*." Nevertheless, when read in context, the trial court's admonition to the jury clearly reflects that the other sodomy and rape cases referenced by the prosecutor did not pertain to Appellant. Thus, we cannot see how the trial court erred in failing to *sua sponte* declare a mistrial when its immediate intervention and admonition of the jury following the comment sufficiently remedied any potential confusion as to the additional cases referenced by the prosecutor. Point denied.

In his fourth point, Appellant contends that the trial court erred by ordering, in its written judgment, that his life sentence "be served consecutive with other sentences" because the trial court failed to orally impose consecutive sentencing at the sentencing hearing. Appellant concedes he failed to properly preserve this issue and requests we review it for plain error pursuant to Rule 30.20. "An unauthorized sentence affects substantial rights and results in manifest injustice." ***State v. Greer***, 348 S.W.3d 149, 153 (Mo. App. E.D. 2011). "Therefore, it constitutes plain error for the trial court to impose a sentence in excess of that authorized by law." ***Id.***

Appellant avers that the trial court imposed a sentence in its written judgment that is in excess of that authorized by law because the trial court failed to order consecutive sentencing during the oral pronouncement of his sentence. Section 558.026.1 provides that "[m]ultiple sentences of imprisonment shall run concurrently unless the court specifies that they shall run consecutively." Similarly, Rule 29.09 provides:

> The court, when pronouncing sentence, shall state, whether the sentence shall run consecutively to or concurrently with sentences on one or more

14

offenses for which defendant has been previously sentenced. If the court fails to do so at the time of pronouncing the sentences, the respective sentences shall run concurrently.

Thus, "Rule 29.09 establishes a bright-line principle that when a sentencing court fails at the time of oral pronouncement to state whether a sentence is concurrent or consecutive, the mandatory language of the rule fills the gap and renders the sentence concurrent." *State ex rel. Zinna v. Steele*, 301 S.W.3d 510, 514 (Mo. banc 2010).

The State concedes that the trial court erred in memorializing Appellant's sentence as consecutive when it failed to state the sentencing was consecutive at the time of oral pronouncement. Thus, the State does not contest Appellant's request that the written judgment be corrected to state Appellant's sentence is to be served concurrent with any other sentences. Accordingly, we remand this case to the trial court with instruction to correct the written judgment to reflect concurrent sentencing. Point granted.

In his fifth point, Appellant asserts that the trial court erred in finding him to be a prior offender in that the State failed to prove beyond a reasonable doubt that his previous felony conviction occurred prior to the date of commission of the present charged offense. Appellant explains that his prior conviction occurred on September 1, 2010, and the date of commission of the presently charged offense was between July 1, 2002, and August 31, 2002. Thus, Appellant contends that he cannot be considered a prior offender under § 558.016. Appellant requests plain error review as he failed to properly preserve this issue by failing to object or include it in his motion for new trial.

Section 558.016.2 provides that "[a] 'prior offender' is one who had pleaded guilty to or has been found guilty of one felony." "The pleas or findings of guilty shall be prior

15

to the date of commission of the present offense." **§ 558.016.6**.  Thus, the pleas or findings of guilt used as the basis for the prior offender status must have occurred prior to the date of commission of the present offense for which the defendant is being tried. *See* **State v. Vaught**, 34 S.W.3d 293, 296 (Mo. App. W.D. 2000) (finding that the trial court erred in sentencing the defendant as a persistent misdemeanor offender when the two offenses used to establish the defendant's persistent offender status occurred after the date the defendant committed the misdemeanor for which he was on trial) *overruled on other grounds by* **State v. Darden**, 263 S.W.3d 760 (Mo. App. W.D. 2008).

Appellant was sentenced as a prior offender based upon his 2010 conviction for second-degree statutory rape.  The date of commission for Appellant's present offense of first-degree statutory rape was between July 1, 2002, and August 31, 2002.  Thus, the finding of guilt in Appellant's 2010 conviction did not occur prior to the date of the commission of Appellant's present offense.  Accordingly, the trial court erred in sentencing him as a prior offender.

However, a finding that a defendant was erroneously charged as a prior offender does not automatically amount to manifest injustice requiring reversal.  The Eastern District of this Court has found that "[t]he only legal consequence of finding prior offender status is the loss of the right to jury sentencing."  **State v. Drudge**, 296 S.W.3d 37, 41 (Mo. App. E.D. 2009).  "A defendant waives his statutory right to a jury-recommended sentence where he allows the trial court to determine his sentence without raising his right to have the jury recommend a sentence."  **Id.**  Thus, where, as here, a defendant has waived his statutory right to jury-recommended sentencing, the

defendant cannot later claim that manifest injustice resulted from the trial court determining his sentence.

Appellant concedes that his failure to object prevents him from claiming manifest injustice resulted from the trial court's sentencing. Nevertheless, Appellant is not requesting re-sentencing; instead, Appellant requests we correct his erroneous classification as a prior offender given that Missouri courts have acknowledged that "there are other possible ramifications of being improperly classified as a prior offender, such as the possibility of it affecting future parole eligibility." *State v. Robinson*, 353 S.W.3d 448, 450 (Mo. App. E.D. 2011); *see also Drudge*, 296 S.W.3d at 41.

Our review of the written judgment reveals that the trial court failed to memorialize its finding that Appellant was a prior offender. Nonetheless, because we must remand this case in order to correct other portions of the written judgment pertaining to Appellant's sentencing, we further instruct the trial court that, on remand, any classification of Appellant as a prior offender should be excluded from the written judgment. Point granted.

In sum, we reverse Appellant's sentence with respect to the consecutive sentencing, and remand this case with instruction to the trial court to correct its written judgment to reflect concurrent sentencing and to exclude any reference to a prior offender classification. In all other respects, the judgment of conviction is affirmed.

Joseph M. Ellis, Judge

All concur.

17