

# In the
# Missouri Court of Appeals
# Western District

STATE OF MISSOURI,             )
                              )
         Respondent,         )
                              )    **WD86282**
    v.                        )    **OPINION FILED:**
                              )    **NOVEMBER 19, 2024**
DUSTIN CHARLES LOVE,    )
                              )
         Appellant.          )

**Appeal from the Circuit Court of Pettis County, Missouri**
**The Honorable Robert Koffman, Judge**

**Before Division Four: Anthony Rex Gabbert, Chief Judge, Presiding,**
**Lisa White Hardwick, Judge, Gary D. Witt, Judge**

Dustin Love appeals his conviction by a Pettis County jury for the unclassified felony of rape in the first degree under section 566.030.[1] In his first point on appeal, Love argues the trial court plainly erred in admitting evidence that he abused a child other than the victim in his criminal case. In his second point on appeal, Love argues the trial court plainly erred in failing to *sua sponte* intervene to strike part of the State of Missouri's closing argument that he says was an improper future dangerousness argument. The judgment is affirmed.

---

[1] All statutory citations are to RSMo 2016 as supplemented unless otherwise stated.

**Facts[2]**

Dustin Love was charged by the State of Missouri ("the State") with one count of rape in the first degree for allegedly having sexual intercourse by forcible compulsion with his step-daughter G.M. ("Victim") and with one count of child molestation in the first degree for allegedly groping Victim's breasts. The case proceeded to jury trial. The following evidence was presented:

In July 2021, C.L. received a phone call from her twelve year-old daughter ("Victim") reporting that Love was trying to rape her. Victim told her mother that she had locked herself and her younger sister in their bedroom. Victim's mother kept Victim on the phone and immediately came home. When Victim's mother arrived home, Love was gone. Victim's mother took Victim to the Pettis County Sheriff's Department.

Victim was subsequently interviewed at a Child Advocacy Center ("CAC"). During the interview, Victim recounted several incidents where Love sexually abused her. Victim, who was thirteen years old at the time, stated that Love raped her when she was eight or nine years old. Victim stated Love watched her when her mother worked nights. On one occasion, Love gave her candy, blindfolded her, took her to his room, and had her lie down on the bed. Love took off Victim's clothes and began touching her chest, buttocks, and hips. Victim "felt something go inside of her." Love "pulled it out and put

---

[2] "We state the facts and all reasonable inferences derived therefrom in a light most favorable to the verdict, and we reject all contrary evidence and inferences." *State v. Foster*, 591 S.W.3d 518, 520 n.1 (Mo. App. W.D. 2019) (internal quotation marks omitted).

it back in a bunch of times." He then flipped Victim on her stomach and did "the same thing to [her] butt." Love placed something in Victim's hand and made her touch it until she felt a "warm liquid." Love left the room, returned with a towel, and wiped off Victim's hand. Victim stated she told her mother about the incident but her mother assumed she was not telling the truth or Victim misunderstood what Love was doing.

Victim disclosed another incident that occurred when she was approximately twelve years old. Love did "the same stuff" except Victim was not blindfolded. Victim stated that Love took her to his room, locked the door, and took Victim's clothes off. Love pushed Victim into the adjoining bathroom and made her "lean over" in the shower. He "put his body part in [her] body part and then went in and out a lot of times." Love also "smacked [her] butt" and "sprayed white stuff on [her] stomach and chest." Victim did not tell her mother because Love said "if [she] told, he would hurt [her] mom."

Victim spoke about the July 2021 event that prompted her mother to go to the police. Love "got really drunk and [tried] to rape [her]." Love had returned home smelling like beer and told Victim it was time for bed. Victim was suspicious because "every time [Love] drinks something bad happens." Victim put her sister on the bed and locked the bedroom door "in case something happened." Love attempted to enter Victim's bedroom and told her to unlock the door because he had "brought her some candy." When Victim opened the door, Love grabbed her by the neck and pushed her into the living room. Love told Victim she "needed to earn his trust." He pushed her against the front door and attempted to remove her shirt. Victim tried to stop him, but

3

Love blocked her hand. Love groped her chest over the top of her clothes and touched her in between her legs. Victim was able to run back to her room and call her mother.

At trial, the video of Victim's CAC interview was played for the jury without objection from Love. Victim also testified at trial. She confirmed that what she disclosed during the CAC interview was accurate and truthful.

Victim's mother testified that, a month prior to the July 2021 incident, Victim told her mother that Love had "smacked [Victim] on the butt" while she was doing dishes. This had made Victim uncomfortable, and Victim stated she wanted to put a lock on her door so that "she had a safe place to go when she needed to."

Love did not call any witnesses and invoked his right not to testify. The jury convicted Love of rape in the first degree and acquitted him of the charge of child molestation. Love was sentenced to be incarcerated for a term of thirty years.

This appeal follows.

## Standard of Review

Love concedes that neither of his points on appeal are preserved for appellate review. "Whether an unpreserved claim is statutory, constitutional, structural, or of some other origin, Rule 30.20 is the exclusive means by which an appellant can seek review of any unpreserved claim of error and said claim ... is evaluated by this Court's plain error framework without exception." *State v. Mills*, 687 S.W.3d 668, 675 (Mo. banc 2024) (internal quotation marks omitted). "Moreover, [p]lain error review is discretionary." *Id.* (internal quotation marks omitted).

4

In conducting plain error review, the Court conducts a two-step process:

> The first step requires a determination of whether the claim of error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted. All prejudicial error, however, is not plain error, and plain errors are those which are evident, obvious, and clear. If plain error is found, the court then must proceed to the second step and determine whether the claimed error resulted in manifest injustice or a miscarriage of justice.

*Id*. (internal quotation marks omitted). "Moreover, [t]o obtain a new trial on direct appeal based on a claim of plain error, the appellant must show the error was outcome determinative." *Id.* (internal quotation marks omitted).

**Point I**

At trial, Victim's CAC interview was played for the jury in full and without objection from Defendant. During the CAC interview, Victim was asked whether there was "anything else that took place that weekend that made [her] feel uncomfortable or unsafe." Victim told the forensic interviewer that Love often locked her step-brother ("Brother") in his bedroom for long periods of time while his mother was at work. Brother's mother worked the night shift from 6:30pm through 3:30am. Victim said that Brother got locked in his room because he tried to take food from the kitchen when he was hungry. If Brother had to use the bathroom while locked in his room, he would have to yell for one of his younger siblings to let him out. Sometimes, Brother would have to urinate and defecate in a box in his bedroom. Victim further stated that Brother would get in trouble if he was discovered outside his bedroom when he was supposed to be

5

locked inside. Love would kick Brother and use a belt on him as punishment. Victim had seen bruises on Brother's arms, legs, and stomach.

In his first point on appeal, Love claims the trial court plainly erred in admitting this evidence that he allegedly physically abused and neglected his son. Love argues this was evidence of uncharged crimes. He states that this evidence was not legally relevant and its prejudicial effect outweighed its probative value.

"Uninvited interference by the trial court in trial proceedings is generally discouraged because it risks injecting the court into the role of a participant and invites error." *State v. Paine*, 631 S.W.3d 691, 694 (Mo. App. W.D. 2021). "The trial court should take independent action only in the most unusual or exceptional circumstances." *Id*. "Thus, an appellate court will rarely find plain error where a trial court has failed to act *sua sponte* with regard to the proceedings." *Id*. "Missouri courts have been reluctant to criticize a trial court when it has declined to take action on its own motion on behalf of a party during the examination of a witness." *State v. Roper*, 136 S.W.3d 891, 902 (Mo. App. W.D. 2004). "Indeed, such invitations have been rejected in all but the most unusual circumstances." *Id*. "In certain circumstances, a trial judge's intervention in the proceedings may be unwelcome, as the failure to raise an objection may be a matter of trial strategy." *Id*. Moreover, when the State sought admission of Exhibit 1, Victim's CAC interview, defense counsel stated he had no objection. "Plain error review does not apply when a party affirmatively states that it has no objection to evidence an opposing

6

party is attempting to introduce." *Paine*, 631 S.W.3d at 696 (internal quotation marks omitted).

"Trial courts are vested with broad discretion to admit or exclude evidence." *State v. Smith*, 689 S.W.3d 798, 804 (Mo. App. E.D. 2024) (internal quotation marks omitted). "Admission of evidence to show a criminal defendant's propensity to commit an offense is generally disfavored, but both federal and state law recognize an exception regarding crimes of a sexual nature against children." *Id*. Article I, Section 18(c) of the Missouri Constitution states in relevant part:

> "[I]n prosecutions for crimes of a sexual nature involving a victim under eighteen years of age, relevant evidence of prior criminal acts, whether charged or uncharged, is admissible for the purpose of corroborating the victim's testimony or demonstrating the defendant's propensity to commit the crime with which he or she is presently charged. The court may exclude relevant evidence of prior criminal acts if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice.

"Propensity evidence is evidence of uncharged crimes, wrongs, or acts used to establish that defendant has a natural tendency to commit the crime charged." *Smith*, 689 S.W.3d at 805 (internal quotation marks omitted).

"To be admissible, evidence must be both logically and legally relevant." *Id*. "Evidence is logically relevant when it tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence[.]" *Id*. (internal quotation marks omitted). "Legal relevance weighs the probative value of the evidence against its costs—unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or

cumulativeness." *Id*. (internal quotation marks omitted). "[T]he circuit court retains substantial discretion in admitting or excluding [propensity] evidence even if there is a danger of some prejudice." *Id*. (internal quotation marks omitted).

> Although a criminal defendant has the right to be tried for only the charged offense, evidence of prior bad acts may be admissible to establish motive, intent, the absence of mistake or accident, a common scheme or plan, the identity of the defendant on trial, or a coherent picture of the overall events.

*State v. Wilson*, 692 S.W.3d 54, 65 (Mo. App. E.D. 2024). "Generally, acts, statements, occurrences, and the circumstances forming part of the main transaction may be shown in evidence ... where they precede the offense immediately or by a short interval of time and tend, as background information, to elucidate a main fact in issue." *Id*. (internal quotation marks omitted). "Such evidence can also be admitted to present the jury a complete and coherent picture of the charged crimes." *State v. Mosely*, 599 S.W.3d 236, 243 (Mo. App. W.D. 2020) (internal quotation marks omitted).

In *State v. Miller*, 372 S.W.3d 455, 473 (Mo. banc 2012), the victim testified that she did not tell anyone about being sexually abused because she was too afraid. The victim's fear stemmed from the defendant's physical abuse of her mother and brothers. *Id*. The Missouri Supreme Court found that the evidence was not introduced for the purpose of proving the defendant's propensity to commit the crime. *Id*. at 474. Instead, the evidence tended to give a complete and coherent picture of the events that transpired and why the victim did not report the abuse that had been going on for years. *Id*. The defendant's physical abuse was vaguely referenced during the prosecutor's opening

8

statement and was not mentioned during closing argument. *Id*. The Missouri Supreme Court found that trial court did not abuse its discretion. *Id*.

In *State v. Sprofera*, 427 S.W.3d 828, 831 (Mo. App. W.D. 2014), the defendant was convicted of statutory rape for engaging in sexual intercourse with his adopted daughter who was then less than fourteen years old. Relevant to this case, the defendant argued on appeal that the trial court should have *sua sponte* intervened when the State elicited testimony regarding the defendant physically and verbally abusing the victim, the victim's mother, and the victim's siblings. *Id*. at 835. This court discussed *Miller*, 372 S.W.3d 455. *Id*. at 835-36. It held that the evidence regarding prior physical abuse was used to establish a complete and coherent picture of the victim's relationship with the defendant and to explain the victim's delayed reporting. *Id*. at 836. It found no plain error. *Id*.

We also find no plain error in this case. Victim's testimony about Brother being physically abused was in response to a question about what else happened the weekend of her assault that made her feel uncomfortable or unsafe. The testimony about the physical abuse made up less than fifteen minutes of the one hour and fifteen minute recording. The prosecutor did not emphasize Brother's physical abuse. More significantly, Love is criticizing the trial court for not acting on its own to exclude this portion of the CAC interview. It was reasonable for the trial court to have believed that defense counsel made a strategic choice in not objecting to and highlighting the evidence that Love also

9

abused Brother. We will not fault the trial court for failing to intervene under the facts of this case.

The point is denied.

**Point II**

At the end of the State's closing argument, the prosecutor made the following argument:

> You get to use and apply your common sense the same as the instructions tell you. You get to take into account that that is a then 13-year-old little girl sitting there telling that version of events. And then you get to take into account that that piece of testimony is there, and it's not disputed. I've seen nothing come in through the course of this trial that disputes or refutes or in any way disputes the truthfulness and the veracity of what she gave. I think the hardest thing for all of us to understand, the hardest thing for all of us to believe is really that we don't want to believe that it can be true. Unfortunately, I do this all the time, and this happened and this guy behind me is responsible. *And you get the ability to tell him he's not doing it again.*

In his second point on appeal, Love claims the trial court plainly erred in failing to *sua sponte* intervene to strike this part of the State's closing argument. He specifically points to the statement that the jury should convict Love "to tell him he's not doing it again." Love argues that the State of Missouri made an improper "future dangerousness" argument. He states that the evidence against him was not overwhelming, there was no physical evidence, there were no witnesses other than the alleged victim, he did not confess, and the jury acquitted him of one of the charges all of which shows that the improper closing argument constituted manifest injustice.

10

"In general, a prosecuting attorney should not seek to inflame the passions or prejudices of the jury against a defendant." *State v. Fisher*, 575 S.W.3d 508, 512 (Mo. App. S.D. 2019) (internal quotation marks omitted). "An argument that is designed to induce a jury to act on passion or prejudice may include ... speculation about future crimes the defendant might commit[.]" *Id*. (internal quotation marks omitted). "When the State speculates about a defendant's propensity to commit future criminal acts[,] this is error." *Id*. (internal quotation marks omitted). "To put it another way, a defendant has a right to be tried only for what crime he has or has not done, and not for what crime he might do in the future." *Id*. (internal quotation marks omitted).

"However, in its closing argument, the State is permitted considerable latitude in arguing the necessity of law enforcement, the duty of the jury to convict the defendant and prevent crime, and the results to society of a failure to uphold the law." *Id*. (internal quotation marks omitted). "Statements that are made during a closing argument must be viewed in context of the entire record." *Id*. (internal quotation marks omitted). "This is particularly true when an allegedly improper closing argument is subject to plain error review." *Id*. "Under those circumstances, a conviction will be reversed only if the defendant demonstrates the comments had a decisive effect on the outcome of the trial, amounting to a manifest injustice[.]" *Id*. (internal quotation marks omitted).

"[A] trial court has broad discretion in controlling closing arguments." *State v. Parrish*, 684 S.W.3d 752, 759 (Mo. App. E.D. 2024). "It has long been held that plain

11

error relief as to closing argument should rarely be granted and is generally denied without explanation." *Id*. (internal quotation marks omitted).

> Courts are especially hesitant to find plain error in closing argument because counsel's opting not to object is often a matter of trial strategy, and absent an objection and request for relief, the trial court's options are narrowed to uninvited interference with summation and a corresponding increase of error by such intervention.

*Id*. (internal quotation marks omitted).

In *State v. Vorhees*, 342 S.W.3d 446, 450 (Mo. App. S.D. 2011), the appellate court found no plain error where the prosecutor stated during closing argument to "[t]hink about that little girl if you let that man think he can walk out of this courtroom today and not suffer any penalty for what he did. And don't just think about what it would do to her. Think about the next little girl and the next little girl." The court reviewed numerous similar cases:

> We also note the following examples of closing argument that did not merit plain error relief. [*State v. Wolf,* 326 S.W.3d 905, 907 (Mo. App. S.D. 2010). ] (no plain error where prosecutor, in closing argument, urged the jury to "make sure there's not another little girl out there"); *State v. Dixon,* 70 S.W.3d 540, 550 (Mo. App. W.D. 2002) (comment was improper, but was not plain error meriting relief where prosecutor requested the jury to "[s]end [the defendant] to prison for the rest of his life so he's not out raping any other little girls"); *State v. Brass,* 781 S.W.2d 565, 567 (Mo. App. E.D. 1989) (comment was improper, but was not plain error meriting relief where prosecutor told the jury "I don't want his penis in another child's mouth.").

*Id*. at 451; *see also State v. Boyd*, 659 S.W.3d 914, 930 (Mo. banc 2023) (no plain error where the prosecutor stated in closing argument that the victims "deserve justice for what

happened to them, and no other child should have to promise not to tell what [the defendant] did to them[]" given the brevity of the remark in the context of the entire closing argument.); *Fisher*, 575 S.W.3d at 512 (no plain error where the prosecutor stated in closing argument that it was the jury's choice whether to find the defendant guilty or whether they would allow the defendant to "get up out of that chair, walk out that door to this community to do again what he's done[]" given the brevity of the remark in the context of the entire closing argument.).

"Brief, isolated, nonrepetitive remarks of the State in closing argument rarely call for plain error relief." *Id*. at 513 (internal quotation marks omitted). This is the situation in the current case. "Even if we were to assume the argument was improper, [Love] has failed to show that the trial court's decision not to *sua sponte* intervene resulted in a manifest injustice and was outcome-determinative." *Parrish*, 684 S.W.3d at 760. "Where an allegedly improper argument is brief and isolated, there is not a manifest injustice, as the argument will generally not have a decisive effect on a trial's outcome." *Id*. "In the instant case, the argument was brief and isolated." *Id*. "It neither resulted in a manifest injustice nor had a decisive effect on the trial's outcome." *Id*.

The point is denied.

### Conclusion

The judgment is affirmed.

_____
Anthony Rex Gabbert, Chief Judge

All concur.

13